# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-1538V

| | |
|---|---|
| DONNA NOMICK, | Chief Special Master Corcoran |
| Petitioner, | Filed: September 19, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Isaiah Richard Kalinowski*, Bosson Legal Group, Fairfax, VA, for Petitioner.

*Joseph Douglas Leavitt*, U.S. Department of Justice, Washington, DC, for Respondent.

## ENTITLEMENT DECISION[1]

On October 18, 2022, Donna Nomick filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"), which she amended on November 20, 2023. Petitioner alleges that she suffered a right-side shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 22, 2019. Amended Petition at 1.

For the reasons set forth below, I find that Petitioner has not established by preponderant evidence that she is entitled to compensation, under any possible form of the claim (Table SIRVA or causation-in-fact). Therefore, the case is properly dismissed.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**I. Relevant Procedural History**

Following activation and Petitioner's filing of additional documents, Respondent determined that this case was not appropriate for compensation and filed his Rule 4(c) Report and a motion to dismiss (ECF Nos. 25, 26). Petitioner moved to strike the motion (ECF No. 27), and I denied that motion (ECF No. 28). Petitioner then filed a response and cross motion (ECF No. 30). Respondent filed a reply and response, and Petitioner replied (EF Nos. 31, 32). The matter is now ripe for consideration.

**II. Relevant Factual History**

  **A. Medical Records**

Petitioner received a flu vaccine on October 22, 2019 at CVS. Exs. 1, 11, 18. Although records document that the vaccine was administered in Petitioner's left deltoid (Ex. 11 at 4; Ex. 18 at 5), she alleges that it was actually administered in her right arm. Amended Petition at ¶¶ 4, 5.

A month after vaccination (November 22, 2019), Petitioner saw Dr Andrew Weiss for a cardiovascular risk assessment. Ex. 2 at 33. The record of this visit indicates that Petitioner reported "joint pains," although no further details are provided. *Id.* at 34. No musculoskeletal examination was done, and the record does not mention any shoulder concerns. *Id.*

Petitioner followed up with Dr. Weiss the next month (December 24, 2019) to go over test results. Ex. 2 at 30. The record of this visit again documents unspecified "joint pain," but without mentioning Petitioner's shoulder. *Id.* at 31. Dr. Weiss prescribed medication to address Petitioner's cholesterol. *Id.*

Two months later (February 26, 2020), Petitioner returned to Dr. Weiss. Ex. 2 at 26. The record again lists "joint pain," but without specifying the location. *Id.* at 27. At this appointment, however, Petitioner also reported "symptoms of a knee bursitis which improved with stopping" the medication Dr. Weiss had prescribed. *Id.* at 26. The record does not mention any problems with her shoulder. *Id.*

Petitioner received COVID-19 vaccines in February and March 2021. Ex. 2 at 9. The injection situs was not memorialized in the record for these vaccinations. She later received shingles vaccines in July and September 2021, both in her left deltoid. Ex. 10 at 6, 7. On November 13, 2021, Petitioner received a COVID-19 vaccine in her right deltoid at Safeway Pharmacy. Ex. 10 at 5. Additionally, the record appears to indicate that Petitioner received two flu vaccines in the fall of 2021: on October 13, 2021 (no situs recorded), and November 21, 2021 (in her left deltoid). Ex. 2 at 9; Ex. 10 at 4.

On January 6, 2022, Petitioner saw her primary care provider ("PCP") for cold symptoms. Ex. 2 at 9. She *again* did not complain of any shoulder problems (now well

2

over two years past the vaccination at issue), and a musculoskeletal examination documented only "normal gait." *Id.* at 10. And nearly three months later (March 30, 2022), Petitioner returned to her PCP with a sore throat, but again not complaining of any shoulder problems. *Id.* at 6.

On June 9, 2022, Petitioner saw a dermatologist for concerns about skin lesions on her chest and back. Ex. 7 at 2. The dermatologist noticed a papule on her right upper arm and took a biopsy. *Id.* The record does not provide further information about the papule or Petitioner's right arm.

A few weeks later, Petitioner saw her PCP on June 30, 2022, for *left* shoulder pain. Ex. 2 at 3. She reported that the pain had started nine to ten months earlier after a shingles vaccination, and denied any other related joint symptoms. *Id.* Other than noting that she had basal cell skin cancer removed from her right upper arm, the record is silent on concerns with her right arm or shoulder. *Id.* She was referred to physical therapy ("PT"). *Id.* at 4.

Petitioner returned to the dermatologist on July 13, 2022, to follow up on her arm concerns. Ex. 7 at 6. The dermatologist noted that the pathology report from the biopsy taken the previous month showed basal cell carcinoma, and thus excised the papule. *Id.* at 6-7. The record does not address any other concerns with Petitioner's right arm or provide any history on when the papule appeared or what caused it.

Petitioner continued thereafter to see her PCP for treatment of her *left* shoulder injury. Ex. 14 at 2 (September 23, 2022 appointment). This record also states "[f]lu shot right arm – pain x7 months – basal cell CA," and "Shingrix shot lots of pain in right shoulder; in PT for" – which, confusingly, could suggest that the shingles vaccine caused her right shoulder pain (even though the vaccination records state that both shingles vaccines were administered in her left deltoid). *Id.* She was referred to PT for *left* shoulder pain. *Id.* at 4.

On October 25, 2022, Petitioner was seen for an annual gynecological examination. Ex. 15 at 4. The record noted her declaration that she would "never get" the flu vaccine again, and was "in litigation from skin cancer that resulted as a scar from prior vaccination and then had a separate vaccine resulting in shoulder injury." *Id.* at 8. The record adds with respect to the COVID vaccine that she "[c]omplete[d] Moderna x3 *prior to vaccine incident*" – arguably suggesting that any vaccine-related injury occurred in November 2021 (when she received her third COVID vaccine) or later. *Id.*

3

### B. Declarations

Petitioner submitted two declarations on her own behalf and four from other individuals.[3] Exs. 12, 25, 26, 27, 28, 29. All of the declarations were signed three to four years after the vaccination at issue: Exhibit 12 was signed in January 2023, and the remaining declarations were all signed in November 2023.

Petitioner states that the October 22, 2019 flu vaccine was injected into her right arm. Ex. 12 at ¶¶ 2, 5. She "suffered the onset of abnormally severe pain at the injection site in the moments during and immediately following administration of the vaccination." *Id.* at ¶ 5. Though the pain was intense, this was her first time receiving a flu vaccine, and she "surmised that such pain was normal for a flu vaccination" – although her husband received a flu vaccine just before her and did not complain of any pain. *Id.* at ¶ 6.

When she removed the bandage the next day, Petitioner states that she found a "round, very red mark" on her deltoid. Ex. 12 at ¶ 11. She mentioned it to her sister, a nurse, who told her that vaccination should not leave a red mark and that her pain should not be as intense as she had described. *Id.*; Ex. 25 at ¶ 6. Petitioner states that the "red mark did not go away, but developed into a scar, raised up like a pimple." Ex. 12 at ¶ 11.

Petitioner asserts that on the day of vaccination, her arm was sore, and with each passing day the pain increased. Ex. 12 at ¶ 7. She could not get dressed without pain, and it became painful to sleep on her side or stomach. *Id.* at ¶ 8. She adds, "[e]very movement I made with my right arm was painful." *Id.* At first she thought the pain was transient and would abate with time. *Id.* at ¶ 9.

When her pain did not improve, she began to research online and realized that the vaccine may have been administered improperly. Ex. 12 at ¶ 9. At that point, she decided to seek medical care; however, by this time it was late March 2020, and "I was declined because of the outbreak of covid-19." *Id.* at ¶ 10. She does not state which doctor(s) she contacted or provide any supporting documentation. *Id.*; Ex. 25 at ¶ 8. Her pain "largely subsided" by early June 2020, so she "felt less urgency to seek medical attention." Ex. 12 at ¶ 12; Ex. 25 at ¶ 9. She decided to put the experience behind her and move on. Ex. 25 at ¶ 9.

Petitioner states that the scar from vaccination never went away, and in June 2022 her dermatologist was concerned about it, explaining that some scars can become cancerous, and took a biopsy. Ex. 12 at ¶ 13. The biopsy results revealed basal cell carcinoma. *Id.* at ¶ 15.

Petitioner states that when she learned that "the scar on my arm from my influenza vaccination had developed into basal cell carcinoma," she went to the CVS where she

---

[3] Although Petitioner labeled Exhibit 12 an affidavit, it is not notarized. Nonetheless, it is acceptable as a declaration pursuant to 28 U.S.C. §1746.

4

had received the vaccine to obtain vaccination records. Ex. 12 at ¶ 16. When she arrived home, she noticed that the record "indicated the incorrect arm" of vaccination: the vaccine "was administered to my right arm, but the form indicated 'left deltoid.'" *Id.* at ¶ 17. She called CVS and a pharmacist told her he could not correct the record, directing her to the CVS corporate office. *Id.* at ¶ 18. She spoke to numerous people in the CVS corporate office, who told her that only the pharmacist in the local store could change the record. *Id.* at ¶ 19.

When Petitioner received the biopsy results, she was "quite upset to hear that my struggles from that flu vaccine were still not over." Ex. 25 at ¶ 14. She was alarmed, and at that point decided to look into legal action. *Id.*

Johanna Koenig, Petitioner's daughter in law, submitted a declaration in support of her claim. Ex. 26. Ms. Koenig recalls that she spoke with Petitioner the day after vaccination, and Petitioner "complained of pain in her right arm where the vaccination had been given." *Id.* at ¶ 3. At the time of vaccination, Petitioner was dealing with the death of her ex-husband, who had died just three days before vaccination. *Id.* at ¶ 4. Ms. Koenig recalls that the appearance of the scar caused Petitioner embarrassment and stress, but she was bothered even more by the pain she experienced. *Id.* at ¶ 5.

Ms. Koenig believes that the Pandemic "is important in the context of the treatment that Donna received for the vaccination injury." Ex. 26 at ¶ 6. She describes Petitioner as a strong woman who likes to be independent, which she believes led Petitioner to invalidate her own concerns and feelings about her pain. *Id.* Ms. Koenig "remember[s] her complaining to me about the pain on several occasions, on phone calls and during personal family meetings," although she does not specify when these took place. *Id.* at ¶ 7.

Carol Vujanic, Petitioner's sister and a registered nurse, filed a declaration in support of the claim. Ex. 27. Ms. Vujanic states that in 2018 she was responsible for giving flu vaccines to the 48 nurses in her hospital unit, and she has also given vaccines in her role as a community health nurse. *Id.* at ¶ 2. Ms. Vujanic states that she spoke with Petitioner after she received the vaccine, and she complained of arm pain – although Ms. Vujanic does not address *how long* after vaccination this conversation occurred, or how she was able to recall it four years later.[4] *Id.* at ¶ 3. Ms. Vujanic told Petitioner it was normal to have soreness after vaccination. *Id.* However, when Petitioner's complaints lasted into the weeks following vaccination, Ms. Vujanic told Petitioner that did not seem right. *Id.*

When Ms. Vujanic saw Petitioner in person, she asked to see where the vaccine was administered. Ex. 27 at ¶ 4. Ms. Vujanic does not state when this occurred. The

---

[4] Ms. Vujanic signed her declaration on November 21, 2023.

5

injection site was red, with a bump, and Ms. Vujanic told Petitioner that was not right and that it was not given in the correct spot. *Id*. She became very concerned when Petitioner continued to complain of pain. *Id*.

Kathryn Heaps, a close friend and neighbor of Petitioner, submitted a declaration on her behalf. Ex. 28. She recalls that "in the autumn of 2019" Petitioner told her she had received a vaccine in her right arm that left a red bump and that her arm ached. *Id*. at ¶ 2. At that time, she had "lost a very dear loved one in her life and was expecting her first grandchild," so seeking treatment for her arm was not a priority. *Id*. at ¶ 3.

Petitioner teaches piano to Ms. Heaps' granddaughter in addition to playing the hammer dulcimer, both of which require the use of both arms. Ex. 28 at ¶ 5. Petitioner told Ms. Heaps that playing both instruments was difficult and would cause pain that radiated into her shoulder and up into her neck. *Id*. After Petitioner's grandson was born, Petitioner told Ms. Heaps that she was concerned about picking him up or holding him because her arm was so uncomfortable. *Id*. at ¶ 6. She had agreed to help care for her grandson while his parents worked, but worried about her arm impairing her ability to do so. *Id*.

Frances Brocato, Petitioner's mother, submitted a declaration on her behalf. Ex. 29. Petitioner called Ms. Brocato a day after vaccination, complaining that she was in a lot of pain and asking if her mother had ever had a lot of pain after a flu shot. *Id*. at ¶ 2. She had not. *Id*. They spoke daily for the next few days, and Petitioner described progressively worsening pain. *Id*. at ¶ 3. Ms. Brocato visited Petitioner, and saw that she could not move her arm without pain and had a red bump at the injection site. *Id*.

In early 2020, Petitioner told Ms. Brocato that she had tried to schedule an appointment with her doctor, but "Covid had shut down her physician's office." Ex. 29 at ¶ 5. Ms. Brocato asserts that Petitioner "has always been able to handle pain well." *Id*. at ¶ 6. However, for several months "she lost much of the movement in her arm, shoulder, and neck" due to her injury, and it was "difficult or impossible" to pick up her grandchild. *Id*.

### III. Parties Arguments

Respondent argues that the case should be dismissed because Petitioner has not satisfied the statutory severity requirement, and has not met the specific SIRVA Table requirements. Respondent's Motion to Dismiss, filed Mar. 11, 2024, at *6-12 (ECF No. 25) ("Resp. Mot."). In particular, Petitioner has not established that she experienced residual effects of her injury for more than six months after vaccination, and has not otherwise satisfied the severity requirement. *Id*. at *6-7. Petitioner never reported shoulder pain related to her October 2019 flu vaccination, despite three medical appointments in the four months after vaccination. *Id*. Petitioner's only documented symptoms of shoulder pain appear in records between June and September 2022 –

6

nearly *three years* after vaccination – and a shingles vaccine (which is not covered by the Vaccine Act) was identified as the precipitating event in these records. *Id.* at *7.

Respondent also argues that Petitioner has not satisfied the requirements of a Table SIRVA claim. Resp. Mot. at *7. The vaccination record documents that the at-issue vaccine was administered in Petitioner's *left* deltoid, while Petitioner asserts a *right*-sided SIRVA. *Id.* at *8. Although Petitioner has submitted a declaration asserting that the vaccine was actually administered in her right shoulder, this declaration – signed *over three years* after vaccination – is not sufficient to outweigh the contemporaneous vaccination record. *Id.*

Petitioner responds that she has established the requirements for a Table SIRVA. Petitioner's Cross-Motion, filed May 13, 2024, at *14-17 (ECF No. 30) ("Pet. Mot."). She asserts that she experienced pain and symptoms in her right shoulder beginning with the administration of the vaccine. *Id.* at *14. She adds that "[t]o the extent that her medical records recorded her complaints about her right shoulder injury . . . she always [related] the onset to the time of her October 2019 flu vaccination." *Id.*

Petitioner acknowledges that she did not complain of shoulder pain "during the time of her acute symptoms," in the months after vaccination, but maintains that this is understandable under the circumstances. Pet. Mot. at *15. She waited five months for her symptoms to resolve on their own. *Id.* When her pain did not abate, she decided to seek care, but was "thwarted by the severe restrictions on seeking medical care for anything but emergencies" due to the COVID-19 Pandemic. *Id.* By the time those restrictions were lifted, she asserts that "her pain and limitations in range of motion had largely resolved," and thus she did not seek treatment at that time. *Id.*

Petitioner further argues that the "contents of a vaccination record are not absolute," and that I may make findings of fact concerning vaccination even when no vaccination record exists. Pet. Mot. at *19. She cites *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021), for the proposition that the absence of information within medical records is not proof of the absence of symptoms. *Id.* at *19. Petitioner asserts that her medical records from 2022 are consistent with her testimonial evidence from 2023 – and "it is only a drug store record that is inconsistent with Petitioner's account" – ignoring that the "drug store record" is a contemporaneous record documenting a medical intervention, while the medical records and declarations she relies on are from approximately *three or four years* after the events in question and thus not at all contemporaneous. *Id.* at *20.

Petitioner asserts that the CVS vaccination record is not a record containing information supplied to a health care professional for diagnosis and treatment entitled to deference pursuant to *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Instead, Petitioner argues (without evidence) that it is "an oft-neglected afterthought for a busy pharmacy technician." Pet. Mot. at *20. Petitioner suggests that I

7

afford more weight to her 2022 medical visits for a left-sided SIRVA caused by a shingles vaccine, at which she related that she had suffered from SIRVA symptoms in her right shoulder following her flu vaccination. *Id.* at *20-22. Rather, it is "a medical record generated in the context of seeking medical treatment, which is properly afforded a presumptive weight of accuracy by *Cucuras* and related cases" (*id.* at *22) – ignoring that at this appointment, Petitioner was seeking treatment *for a different injury*, and thus the reasons for affording greater weight to treatment records pursuant to *Cucuras* are less salient.

Petitioner adds that her cardiology records from this timeframe document "joint pain," and asserts that "[i]f the Court accepts that this complaint of joint pain is related to Petitioner's shoulder injury, those notations would support the persistence of pain in Petitioner's shoulder for the first four months following vaccination." Pet. Mot. at *21. And she argues that she had a papule at the site of her 2019 flu vaccination that "persisted for years from the time of vaccination" and that papule "was a persistent sequela of the shoulder injury." *Id.* at *22.

Respondent in reaction contends that Petitioner "never reported experiencing any shoulder pain related to her October 22, 2019 flu vaccination," and thus cannot establish that she suffered residual effects of a shoulder injury for more than six months. Respondent's Combined Response, filed June 27, 2024, at *4 (ECF No. 31) ("Resp. Response"). And Petitioner has not established that the at-issue vaccine was administered in her right arm, contrary to the contemporaneous vaccination record. *Id.* at *5. Respondent argues that the testimonial statements are from "interested persons and conflict with" contemporaneous records, which should be afforded more weight. *Id.* Respondent adds that Petitioner's claim is "further weakened by her receipt of an uncovered COVID-19 vaccination in her right deltoid" in November 2021 – closer in time to her reporting her alleged vaccine-related shoulder injury to a medical provider. *Id.* at *6.

Although Petitioner asserts that her lack of treatment after vaccination is explained by a five-month wait for her symptoms to resolve on their own, followed by restrictions surrounding the COVID-19 Pandemic, the record does not, in Respondent's reading, support this claim, since Petitioner had three appointments with Dr. Weiss in the four months following vaccination. Resp. Response at *8. At one of these appointments she reported a resolution of knee bursitis; Respondent asserts it is "inconceivable" that Petitioner would have remained silent about "abnormally severe" shoulder pain while also mentioning knee pain that was improving. *Id.* at *8.

Respondent also argues that Petitioner's medical records contain no evidence of reduced range of motion in Petitioner's right shoulder. Resp. Response at *9. And Petitioner cannot prevail on an off-Table injury claim as there is "nothing in the record to suggest that BCC [basal cell carcinoma] manifesting more than two years after a

8

vaccination is a medically appropriate time frame," preventing her from meeting the third criterion under the causation test established by the Federal Circuit in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). *Id.* at *13.

Petitioner replies that none of her fact witnesses have a financial interest in the case. Petitioner's Reply, filed July 11, 2024, at *2 (ECF No. 32) ("Pet. Reply"). And her testimonial evidence does not conflict with contemporaneous medical records created by disinterested physicians, emphasizing that the CVS vaccination record was created by a pharmacy technician rather than a disinterested physician. *Id.* at *3. Petitioner asserts that her medical records from the months following vaccination are silent about shoulder pain, and thus her testimonial evidence does not contradict the records – distinguishing her situation from *Cucuras*. *Id.*

Petitioner also clarifies that she alleges a single injury, with three separate harms:

> The unitary injury is the injection related trauma to the shoulder. The three distinct harms are: 1) Petitioner's right shoulder pain and loss of range of motion that lasted from onset of vaccination on 22 October 2019 until June 2020; 2) Petitioner's vaccination scar papule on her right shoulder that appeared within 24 hours of her vaccination on 22 October 2019 and lasted until it was excised on 13 July 2022; and 3) the basal cell carcinoma of Petitioner's right shoulder papule . . . . Altogether, these three harms of Petitioner's unitary right shoulder injury lasted over six months.

Pet. Reply at *6.

Concerning situs, Petitioner argues that "it would confound belief that five credible fact witnesses lied under penalty of perjury regarding which arm Petitioner received her vaccine . . . or that a large red vaccination scar suddenly appeared on Petitioner's right arm from 2019 to 2022." Pet. Reply at *8. In Petitioner's view, it "would be more reasonable to accept that a local CVS drugstore . . . erroneously marked which arm Petitioner's vaccine" was injected into. *Id.*

Petitioner asserts that her failure to seek treatment for several months following vaccination "can be reasonably understood" given that it was her first time receiving a flu vaccine and she initially assumed her symptoms were a normal side effect of it. Pet. Reply at *10. Petitioner asserts that it is "completely within reason" that her cardiologist did not record shoulder pain, given that it is unrelated to his specialty. *Id.* at *11. And Petitioner argues that because her testimonial evidence consistently supports pain beginning on the date of vaccination, "the veracity of these declarations should be accepted in the absence of contradictory medical records" (*id.*) – ignoring that, under the Vaccine Act, findings are made on the basis of preponderant evidence, and there is no requirement that a special master accept testimony simply because it is not contradicted by medical records. Vaccine Act § 13(a)(1).

vaccination is a medically appropriate time frame," preventing her from meeting the third criterion under the causation test established by the Federal Circuit in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). *Id.* at *13.

Petitioner replies that none of her fact witnesses have a financial interest in the case. Petitioner's Reply, filed July 11, 2024, at *2 (ECF No. 32) ("Pet. Reply"). And her testimonial evidence does not conflict with contemporaneous medical records created by disinterested physicians, emphasizing that the CVS vaccination record was created by a pharmacy technician rather than a disinterested physician. *Id.* at *3. Petitioner asserts that her medical records from the months following vaccination are silent about shoulder pain, and thus her testimonial evidence does not contradict the records – distinguishing her situation from *Cucuras*. *Id.*

Petitioner also clarifies that she alleges a single injury, with three separate harms:

> The unitary injury is the injection related trauma to the shoulder. The three distinct harms are: 1) Petitioner's right shoulder pain and loss of range of motion that lasted from onset of vaccination on 22 October 2019 until June 2020; 2) Petitioner's vaccination scar papule on her right shoulder that appeared within 24 hours of her vaccination on 22 October 2019 and lasted until it was excised on 13 July 2022; and 3) the basal cell carcinoma of Petitioner's right shoulder papule . . . . Altogether, these three harms of Petitioner's unitary right shoulder injury lasted over six months.

Pet. Reply at *6.

Concerning situs, Petitioner argues that "it would confound belief that five credible fact witnesses lied under penalty of perjury regarding which arm Petitioner received her vaccine . . . or that a large red vaccination scar suddenly appeared on Petitioner's right arm from 2019 to 2022." Pet. Reply at *8. In Petitioner's view, it "would be more reasonable to accept that a local CVS drugstore . . . erroneously marked which arm Petitioner's vaccine" was injected into. *Id.*

Petitioner asserts that her failure to seek treatment for several months following vaccination "can be reasonably understood" given that it was her first time receiving a flu vaccine and she initially assumed her symptoms were a normal side effect of it. Pet. Reply at *10. Petitioner asserts that it is "completely within reason" that her cardiologist did not record shoulder pain, given that it is unrelated to his specialty. *Id.* at *11. And Petitioner argues that because her testimonial evidence consistently supports pain beginning on the date of vaccination, "the veracity of these declarations should be accepted in the absence of contradictory medical records" (*id.*) – ignoring that, under the Vaccine Act, findings are made on the basis of preponderant evidence, and there is no requirement that a special master accept testimony simply because it is not contradicted by medical records. Vaccine Act § 13(a)(1).

**IV. Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the

underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

**Analysis**

Petitioner's entire claim is based on the contention that an October 2019 vaccination caused a *right*-sided injury, albeit with several dimensions (SIRVA, scar papule, and then basal cell carcinoma). However, the claim has several deficiencies – and they make entitlement impossible under any form of claim, Table or causation-in-fact.

*Vaccination Situs*

The vaccination record documents that the at-issue vaccine was administered in Petitioner's *left* arm. Admittedly, vaccine administration records can be incorrect, and do not conclusively resolve situs questions. But the first record in which *any* right-sided

11

concerns were raised is from June 2022 (when the right arm papule was observed (Ex. 7 at 2)) – more than thirty months post-vaccination, an inordinate amount of time for any vaccine-associated claim.

The next medical record that *could* be read as documenting a link between Petitioner's October 2019 vaccination and any injury is from a September 23, 2022 appointment with Petitioner's PCP, when she sought treatment for a different problem: a *left shoulder injury*. The record adds "[f]lu shot right arm – pain x7 months – basal cell CA" and "Shingrix shot lots of pain in right shoulder." Ex. 14 at 2. But this record does not establish the facts that Petitioner alleges support her claim. Rather, it suggests that she received a flu vaccine in her right arm and had pain for seven months as well as basal cell carcinoma – but provides no dates for the crucial questions of when the vaccination occurred or *when the pain began*. Thus, it is exceedingly weak evidence, not only as to situs but in larger regards as well.

Petitioner asserts that pursuant to *Cucuras*, this September 2022 record should be afforded deference because Petitioner provided information to a doctor for the purpose of seeking medical treatment. But the mere fact a claimant *reports* to a medical treater than something has occurred is not evidence it did in fact occur. And the context of any medical record is always important as well. Here, the context for this record – created just under *three years* after the vaccination in question, and with no intervening evidence of any shoulder concerns at all in that time (while the Petitioner sought treatment, and was vaccinated again, several times in the interim) – causes me reasonably not to give it much probative weight.

Petitioner also relies on witness testimony to establish situs. Again, this kind of evidence can often assist a claimant, even when the original vaccine record suggests a different situs. But to do so, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez*, 2013 WL 1880825, at *3 (citing *Blutstein*, 1998 WL 408611, at *5). A claimant cannot prevail merely by gathering a large number of witness statements – especially when other corroborative record proof is lacking.

While Petitioner has offered a total of six declarations, all were signed *three or four years* after the events in question, and after this matter was in litigation. The significant gap between the events and the testimony, along with the litigation context, greatly reduces their evidentiary value. Additionally, the offered testimony is non-specific and conclusory as to important matters. For example, Petitioner herself states that she attempted to seek medical care in March 2020 "and was declined" – but does not explain what this means (i.e., who she contacted, or whether she was offered or medical care via telehealth), and has also offered no independent corroborative proof for this contention. And the declarations do not explain how the witnesses were able to recall the events in question so many years later. For instance, Petitioner states that her pain "largely subsided" by early June 2020, but does not explain how she was able to pinpoint this

12

timing – which is crucial on the question of whether she has established more than six months of residual effects – over three years later.

The timing of the September 2022 PCP appointment also is problematic itself, for purposes of supporting the alleged administration situs. This treater visit occurred less than a month before this Petition was filed, and in the context of seeking care for a *different* problem. It could thus be reasonably inferred that Petitioner provided the information about her *prior* injury not solely for purposes of informing and improving her medical care, but to bolster her litigation position. *See Crittenden v. Sec'y of Health & Human Servs.*, No. 21-0215V, 2024 WL 5261958 (Fed. Cl. Spec. Mstr. Nov. 21, 2024) (inferring that medical visit made during litigation may have been for the purpose of bulwarking the claim as much, if not more than, for treatment of an actual medical concern); *Watts v. Sec'y of Health & Human Servs.*, No. 17-1494, 2019 WL 4741748, at *7 (Fed. Cl. Spec. Mstr. Aug. 13, 2019) (treatment record obtained just before filing claim is of "greatly reduce[d] ... probative value"); *Milik v. Sec'y of Health & Human Servs.*, No. 01-64V, 2014 WL 6488735, at 12 n.16 (Fed. Cl. Spec. Mstr. Oct. 29, 2014) (giving less weight to record created for litigation purposes), *mot. for review denied*, 121 Fed. Cl. 68 (2015), *aff'd*, 822 F.3d 1367 (Fed. Cir. 2016).

Otherwise, the at-issue vaccination record contains no indicia of unreliability. *See Hoag v. Sec'y of Health & Human Servs.*, No. 94-67V, 1998 WL 408783 (Fed. Cl. Spec. Mstr. Apr. 22, 1998) (declining to credit testimonial evidence offered years after the events in question in favor of contemporaneous medical records that were silent on alleged complications after vaccination and contained no indicia of unreliability); C*f. Rich v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 642 (2016) (affirming denial of compensation where claimant did not report symptoms to treaters despite several opportunities to do so, and special master inferred that the symptoms therefore were likely not present to "such a severe and persistent degree" as testimonial evidence indicated). While initial records of administration are never sacrosanct, in this case the first record has not been credibly or persuasively rebutted by other probative and reliable evidence.

Thus, having reviewed the record and the parties' submissions, I find that a preponderance of the evidence demonstrates that Petitioner most likely received the October 2019 flu vaccine in her left deltoid, as the vaccine record indicates. Although she has presented testimonial evidence asserting that the vaccination record is incorrect, her testimony from over three years after vaccination, and after the matter was in litigation, is not sufficient to outweigh the contemporaneous vaccination record.

### *Treatment Delay*

A second concerning deficiency in this record that imperils the claim are the inordinately-lengthy treatment delays evident from Petitioner's medical history. Although treatment delays do not in all cases prevent SIRVAs from succeeding, lengthy delays in seeking care cast doubt on whether a claimant can substantiate a connection between

13

vaccination and an alleged injury, and may result in dismissal. *See Williams v. Sec'y of Health & Human Servs.*, No. 21-1006V, 2025 WL 1924060 (Fed. Cl. Spec. Mstr. June 11, 2025) (dismissing case where claimant did not seek care for over seven months after vaccination); *Orban v. Sec'y of Health & Human Servs.*, No. 21-0978V, 2024 WL 3205134 (Fed. Cl. Spec. Mstr. May 28, 2024) (ruling that the petitioner had not shown that the onset of her shoulder pain occurred within 48 hours of vaccination where she did not seek care until nearly seven months thereafter and, in the interim, underwent a comprehensive physical examination not recording any abnormalities in her joints or muscles); *McCarthy v. Sec'y of Health & Human Servs.*, No. 21-0425V, 2023 WL 9063478 (Fed. Cl. Spec. Mstr. Nov. 29, 2023) (finding onset of shoulder pain was not within 48 hours of vaccination where the petitioner did not seek care until nearly eight months later); *Shoemaker v. Sec'y of Health & Human Servs.*, No. 20-0625V, 2022 WL 2288698 (Fed. Cl. Spec. Mstr. Jan. 18, 2022) (finding that a petitioner had not shown that the onset of her pain occurred within 48 hours of vaccination where she did not seek care until ten months afterward), mot. for. review den., 160 Fed. Cl. 307 (2022).

Here, Petitioner did not *at any point* seek treatment for right shoulder pain or reduced range of motion. At most, she somewhat obliquely referred to right arm pain to a doctor nearly three years after vaccination – during an appointment for a *different* condition, and less than a month before filing her Petition. And this reference did not state *when* her pain began, or even clearly refer to the October 2019 vaccination that she alleges as causal.

The references to unspecified "joint pain" in the 2019 and 2020 cardiology records do not bolster Petitioner's claim. These records list "joint pain" in the review of symptoms section, but do not specify the location of the pain. Nor do they provide any other information such as when it began or what caused it. There is nothing in these records suggesting that Petitioner was experiencing pain in her right shoulder – let alone pain in her *right* shoulder from a vaccination in her *left* deltoid.

The medical records suggest that Petitioner did not likely experience a SIRVA that either began close in time to vaccination or persisted for six months thereafter. And her testimonial evidence to the contrary is entitled to little weight given the significant gap between the events involved and the making of the declarations, that it was produced *during litigation* to bolster a case with very little other evidentiary support, and the conclusory nature of the declarations on key questions.

The delay impacts Petitioner's case in two ways. First, it underscores the lack of preponderant evidence that Petitioner likely suffered shoulder pain within 48 hours after her October 2019 vaccination. There are *no* medical records that would support a 48-hour onset. The only evidence to that effect is testimonial evidence created years after the events while the matter was in litigation. But it is largely if not wholly uncorroborated.

14

I cannot therefore conclude on this record that Petitioner likely experienced onset of pain consistent with the Table.

Second, the huge treatment gap prevents a finding that Petitioner's claim meets the six-month "severity requirement" applicable to all Vaccine Act claims. Section 11(c)(1)(D). There is no medical record evidence that Petitioner was experiencing any right-side shoulder issues as of April 2020 (six months from vaccination). A year later (April 2021), there was still no record evidence of such concerns, despite the fact that it appears Petitioner received some vaccinations in that period. Fast forward another year, to April 2022: more vaccinations, but still no shoulder treatment visits.

Given such a record, Petitioner cannot establish that she suffered residual effects for more than six months. She has not established that she had shoulder pain or reduced range of motion resulting from her at-issue vaccination at *any* time. Even if she had, the only evidence that any such pain persisted for more than six months is conclusory testimonial evidence prepared during litigation, which I afford little weight.

*Other Issues*

The record shows that Petitioner received at least one other – non-covered – vaccine in her right arm during the lengthy gap between her at-issue vaccination and her first treatment for alleged sequela in her injured arm: a COVID vaccine in November 2021. And the September 2022 PCP record links her right shoulder pain to a Shingrix vaccination. Although this may be a typographical error (given that the vaccination records state that both shingles vaccines were administered in Petitioner's left deltoid), it further clouds Petitioner's claim.

*Failure of SIRVA and Causation Claims*

The amended petition asserts a Table SIRVA claim,[5] describing a "primary injury" of "pain and functional loss" and a "secondary injury" of basal cell carcinoma. Amended Petition at preamble, ¶ 24. But no form of claim is cognizable, given the record in this case. The Table SIRVA fails because Petitioner has not preponderantly demonstrated that (a) the at-issue vaccine was administered in her right arm, (b) she suffered shoulder pain within 48 hours of vaccination, (c) she experienced reduced range of motion at any time, (d) her concerns could not be explained by an intervening vaccination in the same arm, and (e) she experienced six-months sequelae from her pain onset.

Petitioner's follow-on injuries also fail – and not only because she has not met the SIRVA elements. She cannot establish, for example, that the right-side papule seen in

---

[5] To the extent that Petitioner asserts an off-Table and/or significant aggravation claim, she has not established more than six months of residual effects and thus is not entitled to compensation. Any significant aggravation claim would fail for the additional reason that Petitioner has not identified a pre-existing injury that she alleges the vaccine aggravated.

15

June 2022 had anything to do with a left side-administered vaccine – or that onset of such an injury more than *two years* post-vaccination would be medically acceptable. For similar reasons, she cannot link a cancerous growth related to this papule. This case facially does not set forth an actionable claim, no matter the manner in which the claim is framed.

## Conclusion

**Petitioner has failed to preponderantly establish that her injury meets the requirements for a Table SIRVA and fails to establish that she suffered residual effects of any injury for more than six months. Accordingly, this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[6]**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.